# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RYAN LEAVER,

        Plaintiff,

    v.                                  Case No. 14-C-224

GARY SHORTESS,

        Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Ryan Leaver sued Gary Shortess, a sergeant in the Outagamie County Sheriff's Department, alleging that Shortess lacked probable cause and misled a county assistant district attorney in connection with an investigation into a car Leaver had rented from Hertz. Before me presently are a motion for summary judgment, a motion for sanctions, and a motion in limine. For the reasons given below, the motion for summary judgment will be granted and the other motions will be denied.

## I. Background

In 2010 Leaver's car was wrecked in a collision and the driver's insurer, West Bend Mutual, arranged for Leaver to rent a car from Hertz, with the contractual "return" date being August 12, later changed to August 16, 2010. Confusingly, the rental agreement provided that the car must be returned to the Appleton Hertz location on that date "or a higher rate and/or inter city fee will apply." (¶ 19.) Also confusingly, the rental agreement indicated that the "maximum keep" was

62 days. (*Id.*) Another section of the agreement entitled "return" further states that "you must return the car to Hertz by the due date specified on [the] rental record," and "in no event [may] you keep the car for more than thirty (30) days . . ." (ECF No. 15-1 at 54.)

On August 18, two days after the "return date," Deputy John Drews met with an employee of Hertz Appleton to discuss the missing car, and Hertz identified the vehicle as having been stolen. In the Hertz contract, Leaver had listed a Sam Cartier as a contact person. Deputy Drews learned from Cartier that Leaver had packed all his possessions into the car, driven to Montana and may be headed for California. Cartier had briefly lived with Leaver at a motel near Appleton and had received a call from Leaver on or around August 10 from a K-Mart store in Montana. Drews was unable to contact Leaver by phone, as Leaver had checked out of the Montana motel at which he had been staying. Drews entered the vehicle into a stolen car registry and alerted authorities in Montana to be on the lookout for a car matching the Hertz car's description. At some point, Cartier got in touch with Leaver again and told him the police were asking about the car.

On August 26—ten days after the contractual due date—Leaver states he dropped the car off at a Hertz location in the City of Belgrade, Montana. According to Leaver, he pre-arranged to leave the car there by calling the Hertz national number and then talking with an employee at the Belgrade location once he arrived, (ECF No. 28 at ¶ 15-16), although Hertz did not have a record of the car being returned. The next day, Leaver states that he called the Outagamie County Sheriff's Department and the Appleton Hertz to tell them the car had been returned.

That message apparently did not penetrate very far in the Department, because two weeks later, on September 10, Sgt. Shortess states that he received information from within the Department that Montana State Police had located the stolen car in Montana. Based largely on

2

Deputy Drews' earlier report, Shortess prepared a report indicating that the car had been recovered that day (September 10), and he referred the case to the district attorney's office for charges of theft.

Leaver alleges that the referral for prosecution was not the result of miscommunication but intentional malfeasance. That is, he asserts that Sgt. Shortess deliberately left out of his report that the car had been "located" at the Hertz location in Belgrade, Montana. (ECF No. 28, ¶¶ 32-36.) In Leaver's view, Shortess should have reported that the car was "returned" to Hertz on August 26, 2010, and thus that no crime had been committed. Leaver's position was that he had orally been granted permission by Hertz to keep the car past the due date and to return it to Belgrade, rather than Appleton, though he has never offered more than his own hearsay statements to support his version. In other words, he has offered no admissible evidence that the alleged witnesses he identified would have confirmed his version.

After the charge was issued but before he was extradited from Montana where he continued to reside, Leaver wrote the assistant district attorney (ADA) handling the case explaining his version and asking that he contact Matt at the Hertz agency in Montana and "Hertz lead Katherine Horton" at a toll-free number, who could verify his account. The ADA sent Sgt. Shortess a copy of the letter and asked him to follow up and contact the individuals named by Leaver. Although Shortess did not contact all of the witnesses Leaver believed he should have contacted, he did conduct a follow-up investigation in response to the ADA's directive. In his supplemental report, he indicated that he had twice contacted James Foytik, the general manager of the Appleton Hertz, who indicated that Hertz's position was that the car needed to be returned to the Appleton location by August 16 and that the rental was not a "one-way" rental. (ECF No. 19-1 at 2-3.) Hertz had

3

listed Leaver on its "do not rent" list as a result of the incident, and appeared to want to continue the prosecution of the case. Shortess also had contact with a security manager for West Bend Mutual, which had arranged the rental, and the manger reiterated the view that the rental was not a "one-way" rental. (*Id.* at 3.) Shortess concluded: "Based on the contact I had with the general manager of Hertz . . . and the head of security for West Bend Mutual Ins. Co., I believe that the claims being made by Mr. Leaver are not factual and in fact [he] should be held responsible for not returning the vehicle." (*Id.* at 4.)

On May 27, 2011, Leaver was arrested for theft, incarcerated for roughly ten weeks and extradited to Wisconsin. At his August 5, 2011, initial appearance before Outagamie Court Commissioner Brian G. Figy, Leaver's attorney moved to dismiss the complaint on essentially the same grounds Leaver offers here. Leaver's attorney noted the state's omission of the fact that the car was "found" at the Hertz in Montana. (ECF No. 15-4 at 6.) He also argued that the rental contract was vague because it suggested the renter could keep the car as long as he wanted, so long as he was willing to pay a higher rate. Though he found the arguments "intriguing," Court Commissioner Figy found there was a sufficient basis for probable cause and denied the motion.

The issues were revisited in another motion to dismiss hearing in December 2011 before Outagamie Circuit Court Judge Mark McGinnis, with Leaver's counsel even going so far as to argue that the criminal complaint was "perpetuating [sic] a fraud upon the court" because the ADA knew that the car had been returned to a Hertz location in Montana. (ECF No 15-6 at 7:4.) Judge McGinnis denied the motion and specifically rejected Leaver's assertion that the state had omitted some material fact by not indicating that the vehicle was found at the Hertz location in Montana. Ultimately, however, in January 2012 the state moved to dismiss the complaint against Leaver.

4

After settling his claim against Hertz for $225,000, Leaver filed this action against Sgt. Shortess.

## II. Analysis

The complaint alleges that Sgt. Shortess recklessly or intentionally disregarded the fact that there was no probable cause to arrest Leaver on theft charges. The theft statute in question, Wis. Stat. § 943.20(1)(e) (2009-10), provides that it is a crime if anyone "Intentionally fails to return any personal property which is in his or her possession or under his or her control by virtue of a written lease or written rental agreement after the lease or rental agreement has expired." The statute allows a ten-day grace period for the return of personal property, but the parties appear to have ignored the fact that the grace period does not apply to motor vehicles. In any event, Leaver argues that Shortess' failure to include the fact that the car had been "returned" to a Hertz location in Montana directly led to Leaver's subsequent wrongful arrest and incarceration.

There are several flaws in Leaver's argument, including the fact that there is no evidence Sgt. Shortess knew at the time he referred the case to the District Attorney's Office that Leaver had left the car at the Hertz rental car agency in Belgrade, Montana on August 26, 2010. The teletype he received or learned about on September 10 does not contain that information; it merely states that the car was located. Leaver *suggests* that Shortess knew that Leaver had returned the car earlier than September 10, but there is no evidence of that fact, and there is no reason to believe it to be true. Thus, because there is no evidence that Shortess even knew about the details Leaver believes were intentionally omitted, summary judgment is appropriate for that reason alone. Of course, even if he returned the car on August 26, 2010, it still would have been after the date due under the terms of the agreement.

A second problem is that Leaver's argument appears premised largely on his own subjective

5

definition of what it means to "return" another's property. In his view, dropping the car off at a Montana Hertz franchise was enough to return it, which would wipe away any question of probable cause under Wis. Stat. § 943.20(1)(e). He therefore argues, as his lawyer did in his criminal case, that it was unfair for Sgt. Shortess to omit the key fact that the car had been found at the Montana Hertz. If the ADA had known that, he speculates, charges might never have been filed.

To a layman, returning a car to another Hertz franchisee might seem reasonable, or at least enough to ward off theft charges. It might even speak to whether the individual "intentionally" failed to return the property. Wis. Stat. § 943.20(1)(e). But those are jury questions. What's important for charging purposes is that, to the Hertz rental agency in Appleton (the complaining witness), dropping off a car some twelve-hundred miles away was not "returning" the car. Even if the two locations were under the same corporate ownership, the Appleton branch's view was that the contract required return to the Appleton location alone. After all, the car was designed to be a temporary replacement for his damaged car, not a means of making a cross-country trip. There was nothing in the contract suggesting that Leaver could return the car to any location he chose, and in fact it is hard to imagine a business model that would allow customers to take a $20,000 car for an undefined amount of time and return it to any of hundreds or thousands of locations around the country without telling the agency what he intended to do.

It is true that Leaver has non-frivolous contractual arguments to support his view, but law enforcement officers are not required to have training in construing contracts. Moreover, it appears that both the ADA who charged the case and the state court judge who denied Leaver's motion to dismiss read the contract in the same way that Shortess did, which would at the very least indicate he was acting in good faith in concluding that probable cause existed. Regardless, the point is not

6

to decide which side is correct. Instead, the goal for present purposes is to determine whether Sgt. Shortess reasonably believed Leaver had committed a crime. The operative information Shortess possessed was that both Hertz and West Bend, which set up the rental, indicated that it was not a one-way rental, meaning that Leaver was obligated to return the car to Appleton on August 16, 2010, not to anywhere or anytime he chose. Shortess also knew that Leaver had taken all his possessions in the car, demonstrating an attempt to make a permanent move and to not return the car to Appleton. Since Leaver undeniably failed to return the car *to Appleton* on August 16, 2010, as the contract required and as the complaining witness demanded, it does not matter whether Leaver "returned" it to Belgrade, Montana on August 26, or whether Shortess reported to the ADA that the car had been "located" at the Belgrade Hertz location. As far as the Appleton Hertz was concerned, the car had not been returned at all because it had not come back to Appleton. It was still stolen property. This line of thought is found in Shortess' supplemental report, where he indicates both Hertz's and West Bend's view that the contract was not a "one way" rental agreement. Thus, in their view, which Shortess reasonably adopted, the car had not been returned at all. The fact that the car had been found at a Hertz location in Montana was irrelevant, and therefore need not have been a part of Shortess' report. As Judge McGinnis found, there was no material omission.

Finally, Leaver cannot establish causation. Even assuming Shortess should have reported that the car had been located at a Hertz in Montana, or that Leaver had returned it on August 26, it became clear that such information was not considered exculpatory by either the ADA or the state courts. By December 2011, the ADA and the state circuit judge was aware that the car had been located at a Hertz in Montana, but the theft charges persisted. Leaver's criminal defense

7

lawyer told the judge that Leaver returned the car in Montana on August 26 (ECF No. 15-6 at 5), and the judge denied the motion anyway, noting that August 26 was past the due date and that the contract said the car must be returned to Appleton. (ECF No. 15-6 at 18.) These matters were the subject of discussion at the motion hearing, and the judge found no omission. Given that this information was before the ADA and the circuit judge, it makes little sense to believe that Sgt. Shortess's omission of the information played a role in Leaver's continued prosecution. It is clear that even if Shortess had provided all the information Leaver demands, charges would have been filed. The motion for summary judgment will therefore be granted.

**III. Sanctions**

Leaver has moved for sanctions as a result of what he views as inequitable conduct regarding the production of a teletype received by the Outagamie Sheriff's Department on September 10, 2010. The teletype, according to Sgt. Shortess, is what alerted his office that the rental car had been located in Montana. Leaver's motion is primarily predicated on his claim that counsel for the Shortess falsely claimed the legible copy of the teletype it ultimately obtained was produced by Kris Kalina, the TIME System Operations Manager for the Wisconsin Crime Information Bureau ("CIB") within the Division of Law Enforcement services within the Wisconsin Department of Justice. In fact, however, it appears that counsel for Leaver was aware that Kalina did not produce the teletype at the April 3, 2015 hearing before the court on Plaintiff's motion to extend discovery so he could take her deposition. (ECF No. 35 at 31.) The defense had offered a declaration by Kalina in an attempt to authenticate the teletype based on her experience with such matters, not as the person who produced the teletype. (ECF No. 17.) She later submitted a second declaration in which she denied any personal knowledge of the teletype in support of her

8

argument that there was no reason to take her deposition. Viewing the matter in context, I find no reason to impose sanctions, monetary or otherwise.

Shortess originally produced an illegible copy of the teletype, and later told Leaver that the Department could not produce another copy because of FBI rules regarding the privacy of internal law enforcement documents. It finally produced a legible copy, but then had difficulty establishing who had produced the report. The three-page teletype report simply indicates that the 2010 Toyota Camry, which was in the system as "stolen," had been located by Gallatin County / Bozeman Communication Services. (ECF No. 17-1.) It did not say where the car had been found.

As the above discussion suggests, the teletype is largely irrelevant. Apparently, Leaver does not want Shortess to be able to rely on the teletype as evidence that the car was found on September 10, or that he did not return the car earlier. It is not clear that Shortess is even intending to rely on it for that purpose. He testified that he never saw the teletype but the information was conveyed to him by clerical staff in the communications department of the Sheriff's office. The teletype, which contains a very limited amount of information, does not prove or disprove that Leaver left the car at the Hertz in Montana on August 26; instead, it simply says that Montana authorities located the car on September 10. Because it does not speak to whether Leaver dropped off the car any earlier, it is not relevant to Shortess' knowledge on that point. There is no evidence Shortess knew at the time that Leaver had dropped the car off at a Montana Hertz on August 26, and even if he did know that, probable cause could have been established simply by the fact that Leaver failed to return the car to Appleton, as Hertz demanded. Accordingly, given its limited relevance, any difficulties in production of the teletype document do not warrant any kind of sanction.

9

**IV. Conclusion**

For the reasons given above, the motion for summary judgment is **GRANTED**. Judgment will be entered in favor of the Defendant. The motion for sanctions is **DENIED**. The motion in limine is **DENIED** as moot.

**SO ORDERED** this 24th day of July, 2015.

_/s William C. Griesbach_____
William C. Griesbach, Chief Judge
United States District Court

10